UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| CHUONG HONG NGUYEN,<br>*Petitioner*<br><br>v.<br><br>KRISTI NOEM, SECRETARY OF HOMELAND SECURITY; TODD M. LYONS, ACTING DIRECTOR OF IMMIGRATION AND CUSTOMS ENFORCEMENT; SYLVESTER M ORTEGA, SAN ANTONIO FIELD OFFICE DIRECTOR; AND BOBBY THOMPSON, WARDEN OF SOUTH TEXAS IMMIGRATION PROCESSING CENTER;<br>*Respondents* | § § § § § § § § § § § § § § § § § §    Case No.  SA-25-CA-01763-XR |

## ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

On this date, the Court considered Chuong Hong Nguyen's Petition for a Writ of Habeas Corpus (ECF No. 1) and the associated briefing (ECF No. 6, 8). After careful consideration, the Petition is **GRANTED**.

### BACKGROUND

Petitioner Chuong Hong Nguyen is a citizen of Vietnam who arrived in the United States in 1985, at the age of seven. ECF No. 1 at 1. In 1995, Nguyen, then-seventeen, was arrested. ECF No. 1 at 14. He ultimately pleaded guilty to robbery and received a sentence of nine years in prison. *Id.* He was released into Respondents' custody in 2000. *Id.* In August 2000, he was ordered removed from the United States because of his criminal conviction. ECF No. 1 at 1; ECF No. 1-2. His order of removal became final on September 20, 2000. ECF No. 1-2 at 6.

Nguyen remained in immigration detention until May 2001. ECF No. 1 at 1. At that point, he was released on an order of supervision, because (1) his removal to Vietnam was not reasonably

foreseeable and (2) he was neither a danger nor a flight risk. ECF No. 1 at 1–2, 15. Nguyen complied with his conditions of release for twenty-four years, has no criminal history since his 1995 conviction, has maintained work authorization and gainful employment, and is married to a United States citizen. ECF No. 1 at 1–2, 15.

According to Respondents, on October 29, 2024, Nguyen completed paperwork requesting travel documents necessary for his removal to Vietnam. ECF No 6-1 at 3. Shortly thereafter, Respondents delivered the request to the Vietnamese consulate. ECF no. 6 at 7.

On or about November 12, 2025, Respondents revoked Nguyen's release without notice and re-detained him based on his 2000 removal order. ECF No. 1 at 15.

Respondents say that as of December 29, 2025, they were "awaiting a response from the Vietnamese consulate regarding the issuance of a travel document for" Nguyen. ECF No. 6-1 at 4.

## DISCUSSION

### I. Legal Standard

A habeas petitioner must show that they are "in custody in violation of the Constitution or laws or treaties of the United States." *Villanueva v. Tate*, No. CV H-25-3364, 2025 WL 2774610, at *4 (S.D. Tex. Sept. 26, 2025) (quoting 28 U.S.C. § 2241(c)(3)). The petitioner "bears the burden of proving that he is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence." *Id.* (quoting *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011); also citing *Bruce v. Estelle*, 536 F.2d 1051, 1058 (5th Cir. 1976)). "A court considering a habeas petition must 'determine the facts, and dispose of the matter as law and justice require.'" *Id.* (quoting 28 U.S.C. § 2243).

**II. Analysis**

Nguyen argues he is entitled to relief for two reasons. First, he argues that his detention is unlawful under *Zadvydas v. Davis*, 533 U.S. 678 (2001), because his removal is not reasonably foreseeable. Second, he argues that Respondents violated their own regulations in revoking his release and deprived him of meaningful notice and opportunity to respond to the revocation. Because the Court agrees with the first argument, it need not address the second.

a. Petitioner's *Zadvydas* claim is meritorious.

"[T]he Government ordinarily secures [a noncitizen]'s removal during" the ninety days following a final order for the person to be removed. *Zadvydas*, 533 U.S. at 682; 8 U.S.C. § 1231(a)(1). During that ninety-day "removal period," the person subject to removal is typically detained. *Zadvydas*, 533 U.S. at 682. Beyond that point, the Government may in some situations continue detaining them for as long as is "reasonably necessary" to secure their removal. *Id.*; 8 U.S.C. § 1231(a)(6). But, under *Zadvydas*, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized." 533 U.S. at 699. The Supreme Court has recognized a "presumptively reasonable period of detention" of six months following the removal period. *Id.* at 701.

1. Petitioner's *Zadvydas* claim is not barred as "premature."

Respondents argue that Nguyen has not been detained for six months so his *Zadvydas* claim is "premature." There are two problems with that argument. First, a detained person may bring a *Zadvydas* claim before the presumptively reasonably six-month period has run—they will just "have a harder time establishing a right to relief." *Puertas-Mendoza v. Bondi*, No. SA-25-CA-00890-XR, 2025 WL 3142089, at *2 (W.D. Tex. Oct. 22, 2025). That is because making out a *Zadvydas* claim before the six-month period has run requires a petitioner to *prove* "that there is no

3

significant likelihood of removal in the reasonably foreseeable future." *Id.* By contrast, "[t]o make out a *Zadvydas* claim *after* the six months have run, a detained noncitizen need only 'provide[ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.'" *Id.* (emphasis in original) (citing *Zadvydas*, 533 U.S. at 701). "If they do so, 'the Government must respond with evidence sufficient to rebut that showing.'" *Id.* (same).

The second problem with Respondents' argument that Nguyen's *Zadvydas* claim is "premature" is that Nguyen has been detained for longer than *Zadvydas*'s presumptively reasonable six-month period. Respondents seemingly argue that because Nguyen's *current* detention began less than six months ago, *Zadvydas*'s presumption of reasonableness applies. But "*Zadvydas* does not set the presumption at six *continuous* months." *Truong v. Bondi*, No. SA-25-CA-01947-XR, 2026 WL 475296, at *3 (W.D. Tex. Feb. 11, 2026) (emphasis in original). If it did, the government could "'condemn[] [noncitizens] to an indefinite term of imprisonment' as long as" it released them "for a day every six months." *Id.* (quoting *Zadvydas*, 533 U.S. at 695).

To determine whether the presumptively reasonable detention period has passed, the Court must consider whether Petitioner has been detained for a *cumulative* six months since his removal period ended. *See id.* Petitioner's removal order became final on September 20, 2000. ECF No. 1-2 at 6. His removal period ended ninety days later, on December 19, 2000. He remained in detention until May 7, 2001. *See id.*; ECF No. 1 at 1. He was thus detained for four months and nineteen days immediately following his removal period. His current detention has lasted over three months, since November 12, 2025. Taking all that together, Petitioner has been detained for at least six months following his removal period, so his detention is not presumptively reasonable.

*2. Petitioner's removal is not reasonably foreseeable.*

Without any presumption, the Court "must ask whether the detention in question exceeds a period reasonably necessary to secure removal." *Zadvydas*, 533 U.S. at 699. The period is unreasonable if (1) there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future" and (2) the Government fails to "respond with evidence sufficient to rebut that showing." *Id.* at 701. The burden as to the first element is on Petitioner, and he cannot satisfy it with "conclusory statements suggesting that he will not be immediately removed." *Andrade v. Gonzales*, 459 F.3d 538, 543–44 (5th Cir. 2006).

A. There is good reason to doubt that removal is reasonably foreseeable.

Petitioner was released in 2001, in part because his removal to Vietnam was not reasonably foreseeable. ECF No. 1 at 1–2, 15. Absent a change of circumstance, that alone is "good reason to believe" that removal remains not reasonably foreseeable. *Truong*, 2026 WL 475296, at *4.

Beyond that, Respondents requested travel documents for Petitioner in 2000, and Vietnam did not provide them. ECF No. 6-1. "Vietnam has long refused to repatriate Vietnamese nationals who[, like Petitioner,] came to the United States as refugees prior to 1995." *Huynh v. Bondi*, No. C25-2371-KKE, 2025 WL 3718991, at *1 (W.D. Wash. Dec. 23, 2025). The United States and Vietnam did not even have a repatriation agreement until 2008, and the 2008 agreement does not provide for Vietnam's acceptance of pre-1995 arrivals like Nguyen. *Nguyen v. Hyde*, 788 F. Supp. 3d 144, 147 (D. Mass. 2025).

B. Respondents do not provide evidence sufficient to rebut Petitioner's showing.

Respondents say that Petitioner's removal is likely in the reasonably foreseeable future because:

(1) They have removed several Vietnamese nationals to Vietnam in the past two years, and

5

   (2) Respondents delivered Petitioner's request for travel documents to the Vietnamese consulate on October 29, 2024.

ECF No. 6 at 8.

  On the first point, just because Respondents have recently been able to remove some people to Vietnam does not mean they will be able to remove *Petitioner* there, especially given the United States's "long history of not being able to remove pre-1995 Vietnamese arrivals." *Nguyen*, 788 F.Supp.3d at 151.

  Vietnam and the United States signed a Memorandum of Understanding ("MOU") in 2020 regarding Vietnam's "acceptance of Vietnamese citizens who have been ordered removed by U.S. competent authority and who arrived in the United States before July 12, 1995." *Id.* at 148. But Respondents do not mention that MOU, let alone explain its effect on this case. Further, the MOU explicitly "does not give rise to any rights or obligations under domestic or international law" and "does not create or confer any rights, privileges, or benefits to any individual." *Id.* At least one court has identified evidence that, "[d]espite the MOU, . . . suggests that the repatriation of pre-1995 immigrants remains uncertain." *Huynh*, 2025 WL 3718991, at *1. The fact that Respondents did not attempt to remove Petitioner for several years after the MOU went into effect also supports that proposition.

  Next, Respondents having delivered Petitioner's request for a travel document in October 2024 does not, alone, suggest that Petitioner's removal is likely in the reasonably foreseeable future. "Vietnam has total discretion whether to issue a travel document to any individual." *Nguyen*, 788 F. Supp. 3d at 151. Respondents have not explained, particularly in light of Petitioner's pre-1995 arrival and Respondents' failure to remove him for the last 25 years, why Vietnam is likely to accept Petitioner now. It has already been over a year since Petitioner

6

requested travel documents, and there is no reason to think Vietnam will respond—let alone accept the request—in the reasonably foreseeable future.

"[I]f removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." *Zadvydas*, 533 U.S. at 699–700. Petitioner's detention is unlawful, and he must be released.

## CONCLUSION

For the foregoing reasons, the Petition (ECF No. 1) is **GRANTED**.

1. Respondents are **DIRECTED** to **RELEASE** Petitioner Chuong Hong Nguyen from custody, under conditions no more restrictive than those in place before the detention at issue in this case, to a public place by **March 2, 2026**;

2. Respondents must **NOTIFY** Petitioner's counsel by email[1] of the exact location and time of Petitioner's release as soon as practicable and **at least two hours before release;**

3. If Petitioner is re-detained, all applicable regulations and procedures must be followed; and

4. Respondents shall **FILE** a status report on **March 3, 2026**, confirming that Petitioner has been released under conditions of release no more restrictive than those in place prior to the detention at issue in this case.

It is so **ORDERED**.

**SIGNED** this 26th day of February, 2026.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

---

[1] Alejandra Martinez, alejandra.martinez@dmcausa.com, 210-590-1844; Kathrine Meriwether Russell, kat.russell@dmcausa.com, 210-858-5018.